**OLES GRAIN CO. and David Oles,
Plaintiffs–Appellants,**

v.

**SAFECO INSURANCE CO. OF
AMERICA, Defendant–
Appellee.**

No. CIV.A. 3–97–CV–1968R.

United States District Court,
N.D. Texas,
Dallas Division.

June 1, 1998.

---

David Oles, Amarillo, TX, Pro se.

Joe W. Hayes, Templeton, Smithee, Hayes & Fields, Amarillo, TX, for Oles Grain Company.

Brian W. Erikson and R. Scott Luttrull, Quilling, Selander, Cummiskey, Clutts, & Lownds, P.C., Dallas, TX, for Safeco Insurance Company of America.

## MEMORANDUM OPINION

BUCHMEYER, Chief Judge.

This bankruptcy appeal presents a question of first impression for an Article III court concerning 11 U.S.C. § 322(d) of the United States Bankruptcy Code, which provides: "A proceeding on a trustee's bond may not be commenced after two years after the date on which such trustee was discharged."

This opinion holds that: (1) Section 322(d) preempts state law statutes of limitations that provide different limitations periods for actions on a bankruptcy trustee's bond; and (2) the Texas statute of limitations for negligence is not otherwise relevant given the facts of this case.

The judgment of the bankruptcy court is **VACATED** and **REMANDED** for further proceedings.

## I. Background

Now before this Court is the appeal of a final judgment rendered by the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, in an adversary proceeding.[1] Plaintiff–Appellants have appealed the bankruptcy court's February 21, 1997 ruling, which granted Defendant–Appellee's motion for summary judgment on the grounds that Plaintiff–Appellant's claims were barred by statute of limitations.[2]

On June 4, 1985, an involuntary petition was filed against Oles Grain Company ("OGC").[3] On July 10, 1985, the petition was converted to a voluntary proceeding under Chapter 11 of the United States Bankruptcy Code. At that time, Robert H. Tolar ("Tolar") was appointed trustee of the bankruptcy estate pursuant to 11 U.S.C. § 1104, and his bond amount was fixed at $250,000.00. On October 24, 1985, Safeco Insurance Company of America ("Safeco") issued a $250,000 bond, naming Tolar as principal and the United States of America as obligee.[4] The bond required that Tolar,

> shall obey such orders as said Court may make in relation to said trust, and shall faithfully and truly account for all the moneys, assets, and effects of the estate of said debtor which shall come into his hands and possession, and shall in all respects faithfully perform all of this official duties as said Trustee.

Tolar remains the trustee of the OGC bankruptcy estate to this day.

The proceeding that is the subject of this appeal was filed on December 8, 1994 by David Oles and OGC ("Plaintiffs"), on behalf of the United States of America, against Safeco. Plaintiffs sought recovery under the trustee's bond for Tolar's negligent failure to pursue and preserve certain claims of the bankruptcy estate. Specifically, they alleged that Tolar failed (1) to pursue OGC's claims against Lawrence Systems, Inc. of Massachusetts, (2) to preserve the OGC's claims in Adversary No. 386–3076 against Shultz Cattle Company, Carter–Kirchoff Feed Stores, Inc., and Figure One Ranch and Feed Lot, and (3) to pursue OGC's claims against Hipp, Inc.

Safeco moved for summary judgment on statute of limitations grounds. On February 7, 1997, the bankruptcy court granted that

---

1. Bankruptcy Case No. 385–32758–HCA–11; Adversary No. 394–3806.

2. The Bankruptcy Court's opinion is published as *In re Oles Grain,* 206 B.R. 126 (Bankr.N.D.Tex. 1997).

3. The petitioning creditors were RepublicBank–Dallas, N.A., Collingswood Grain Company, and Thomas J. Griffith, Trustee for Hipp, Inc.

4. To qualify as a bankruptcy trustee, a party must "file[ ] with the court a bond in favor of the United States conditioned on the faithful performance of [his] official duties." 11 U.S.C. § 322(a).

motion, finding that Plaintiffs' claims were time-barred under the applicable state law statutes of limitations. It reasoned that because the claims were based on Tolar's negligent failure to pursue and preserve certain claims of the bankruptcy estate, the Texas statute of limitations for negligence applied. Under Tex. Civ. Prac. & Rem.Code § 16.003, negligence suits must be brought within two years of when they accrued. The court concluded that it had been over two years since the claims had accrued.

In so finding, the bankruptcy court rejected Plaintiffs' argument that 11 U.S.C. § 322(d) allowed Plaintiffs more time to bring suit. Section 322(d) provides: "A proceeding on a trustee's bond may not be commenced after two years after the date on which such trustee was discharged." The bankruptcy court held:

> [Section 322(d)] supplements, but does not supplant the underlying state statutes of limitations. In other words, it does not reawaken a suit on a trustee's bond when limitations on the underlying state cause of action against the trustee has already run. The statute clearly states a limitation on the commencement of a suit against a trustee's bond and nothing more.

*In re Oles Grain,* 206 B.R. 126, 132 (Bankr. N.D.Tex.1997).

In addition, the bankruptcy court made a separate finding as to the claims emanating from Adversary No. 386–3076 and from OGC's claims against Hipp, Inc. It found that those claims "appear to be totally without merit on the basis of the orders entered by this court abandoning accounts receivable and approving a settlement between Tolar and Hipp." *Id.* at 133. The court was apparently referring to (1) an order entered on February 26, 1988, which abandoned to Re-publicBank–Dallas OGC's interest in certain accounts receivable that were the subject of Adversary No. 386–3076, and (2) an order approving the compromise between OGC and Hipp, Inc., entered on October 12, 1987. There was no further discussion.

■ Plaintiffs raise numerous issues on appeal. First, they contend that the limitations period for this action is governed by federal law, under which the limitations clock does not even begin running until the bankruptcy trustee has been discharged. Second, they argue that even if state law limitations period is relevant, a genuine issue of material fact existed as to whether Tolar's absence from Texas tolled the statute. Third, they contend that the claims emanating from Adversary No. 386–3076 were not abandoned to RepublicBank–Dallas. Since these claims involve issues of law, the Court reviews the bankruptcy court's rulings *de novo. In re Texas Research, Inc.,* 862 F.2d 1161, 1163 (5th Cir.1989).

## II. 11 U.S.C. § 322(d)

■ The first issue is whether section 322(d) "supplant[s]," or merely "supplements" less-forgiving state law statutes of limitations. Three bankruptcy courts, including the one today being appealed, have found that section 322(d) does not preempt shorter state limitations periods. *In re Louis Rosenberg Auto Parts,* 209 B.R. 668, 673–74 (Bankr.W.D.Pa.1997); *In re Oles Grain,* 206 B.R. at 132; *In re Tri–State Hoists, Inc.,* 1991 WL 193733, *6 (Bankr. E.D.Pa.).[5] Article III courts, however, have yet to apply section 322(d).

OGC argues that section 322(d) creates a federal statute of limitations for actions on a bankruptcy trustee's bond that preempts otherwise relevant state law statutes of limitations. Safeco contends that section 322(d) "is akin to a 'statute of repose,' since it simply sets forth the absolute latest date that any action may be brought upon a trustee's bond." According to Safeco, section 322(d) would only preempt those state statutes of limitations that give parties more time to bring such an action.

Whether section 322(d) preempts stricter state law statutes of limitations is a question of congressional intent. *Cal. Fed. Sav. and Loan Ass'n v. Guerra,* 479 U.S. 272, 280, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987) ("In deter-

---

**5.** One other bankruptcy court tiptoed around the meaning of section 322(d) by finding that the lawsuit was not actually a "proceeding on the trustee's bond," but rather was a claim directly against the trustee for negligence. *In re Noakes,* 104 B.R. 323, 326 (Bankr.D.Mont.1989).

mining whether a state statute is preempted by federal law and therefore invalid under the Supremacy Clause of the Constitution, our sole task is to ascertain the intent of Congress."). The primary source of congressional intent is the text of the statute itself. *See Boureslan v. Aramco,* 857 F.2d 1014, 1018 (5th Cir.1988).

Section 322(d) reads: "A proceeding on a trustee's bond may not be commenced after two years after the date on which such trustee was discharged." Such language could be read as setting merely an outer limit for actions upon a trustee's bond. After all, it does not explicitly enable bond actions brought before two years after the date of discharge. It simply provides that such actions may not be brought after that date. As a matter of pure logic, a shorter state law statute of limitations would not conflict with a federal statute that reads, "A proceeding *may not* be commenced *after* Date X," whereas it would conflict with one that reads, "A proceeding *may* be commenced *until* Date X."

■ The fact that section 322(d) is phrased in the negative, however, is not dispositive. After all, the task of statutory interpretation is guided not by logic, but rather by congressional intent. (These two lodestars are not necessarily aligned.) Indeed, the Supreme Court has found federal statutes of limitations to preempt shorter state limitations periods, even where the federal limitations period was phrased in the negative. For example, it held that the Federal Employers' Liability Act's three-year statute of limitations preempted Texas's two-year limitations period for torts. *McAllister v. Magnolia Petroleum Co.,* 357 U.S. 221, 225–226 & n. 6, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958). The federal limitations period in that case was also phrased in the negative: "No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56.

This Court is of the opinion that Congress intended to create a statute of limitations for actions on a bankruptcy trustee's bond that was to be *the* statute of limitations for such actions. Congress established the bond requirement and the procedures for bringing actions on such bonds,[6] and in passing 11 U.S.C. § 322(d), it established the limitations period for such proceedings. According to the legislative history, section 322(d) "fixes a two year statute of limitations on any action on a trustee's bond." S.Rep. No. 95–989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787; H.R. Rep. 95–595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963. There is no indication that Congress intended to set merely an outer limit, within which states might give parties less time to bring actions on a trustee's bond.

Thus the Court finds that 11 U.S.C. § 322(d) provides the limitations period for Plaintiffs' action against Safeco, not Texas state law. Under section 322(d), such suits are timely until two years after the date on which the trustee is discharged. Because Tolar has not yet been discharged, Plaintiffs' action is timely.

■ This finding alone, however, does not necessarily dispose of the issue. Although section 322(d) provides the exclusive limitations period for actions on a trustee's bond, Texas statutes of limitations may nonetheless be relevant. This may seem counter-intuitive, but federal courts have recognized that state law statutes of limitations may thwart a plaintiff's claim even where the limitations period for that claim is unambiguously prescribed by Congress.

In *Adamson v. Armco, Inc.,* 44 F.3d 650 (8th Cir.1995), for example, the plaintiffs sued for breach of fiduciary duty under ERISA. The Eighth Circuit dismissed the case on the grounds that Minnesota's two-year statute of limitations for benefit claims had run, even though ERISA provided a longer limitations period for breach of fiduciary duty claims. *Id.* at 654–55. The court

---

**6.** Congress required that a person file a bond in order to qualify as a bankruptcy trustee. 11 U.S.C. § 322(a). Congress provided that proceedings on a trustee's bond may be brought to compensate any entity injured by breach of the bond. Fed. R. Bankr.P.2010(b). Congress authorized parties to recover on the bond through adversary proceedings in bankruptcy court. Fed. R. Bankr.P. 9025.

reasoned that to sue for breach of fiduciary duty under ERISA, a party must be a "participant" in an ERISA plan. *Id.* at 654. Because the state limitations period for benefit claims had run, the plaintiffs could no longer claim benefits and were thus no longer participants in an ERISA plan. *Id.* Consequently, they lacked statutory standing under ERISA. *Id.* In so finding, the court rejected the plaintiffs' argument that this holding allowed "a two-year state statute of limitations for benefit claims to preempt ERISA's longer statute of limitations." *Id.* at 655. Rather, it simply held that the running of the state limitations period negated a necessary prerequisite for suit, namely, standing. *Id.*

In *Louisiana–Pacific Corp. v. ASARCO, Inc.*, 5 F.3d 431 (9th Cir.1993), the plaintiff sued a dissolved corporation for cleanup costs under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, ("CERCLA"). Although the claim was brought well within CERCLA's three-year statute of limitations, the Ninth Circuit dismissed it because the State of Washington's two-year corporate-capacity statute of limitations had run. *Id.* at 433–34. In other words, the court found that the CERCLA claim itself was timely, but that it could not be sustained because the defendant corporation was no longer capable of being sued.

*Witco Corp. v. Beekhuis*, 38 F.3d 682 (3rd Cir.1994), was another CERCLA case. There, the plaintiff's otherwise timely claims were thwarted by Delaware's non-claim statute, under which claims on a decedent's estate must be brought within eight months of the decedent's death. *Id.* at 686–88. Again, the CERCLA suit itself was timely, but the state law limitations period negated a crucial element of the suit.

These cases suggest that even where federal law prescribes the statute of limitations for a given cause of action, state law limitations periods may be dispositive where they are relevant to necessary elements of that cause of action. In this case, section 322(d) clearly provides the statute of limitations for actions on a bankruptcy trustee's bond. It could be argued, however, that a necessary element of such an action is that a direct suit against the trustee would be timely. If this proposition were true, then the Texas statute of limitations for negligence would be relevant to this case, despite section 322(d). Thus, this Court must inquire whether an action against a surety (Safeco) is exonerated whenever an action directly against the principal (Tolar) would be untimely.[7] Since the parties cite no federal law for this proposition,[8] the Court will examine Texas state law.

### III. Texas State Law

◼ The Texas Supreme Court has never ruled on this issue. It has addressed related issues, however. One line of cases, beginning with *Hatcher v. State*, 125 Tex. 84, 81 S.W.2d 499 (1935), examined whether an action on a bond is governed by the four-year statute of limitations for breach of a written obligation or by the two-year statute of limitations for breach of an unwritten obligation. The Supreme Court held that the two-year period applies where the bond is simply "collateral security" for performing an already existing duty, whereas the four-year period

---

7. Even if this proposition were true, this issue could conceivably be disposed of on congressional intent grounds. State laws are preempted to the extent that they "stand as an obstacle to the ... full purposes and objectives of Congress." *Cal. Fed. Sav. and Loan Ass'n v. Guerra*, 479 U.S. 272, 281, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987). A court could find that, in passing section 322(d), Congress intended to preempt any state law limitations period that interfered with a party's ability to recovery on a trustee's bond until two years after discharge. However, this Court need not inquire whether Congress intended so much of section 322(d), because as explained below, Texas statutes of limitations do not prevent Plaintiffs from bringing this suit.

8. The Court wonders whether federal common law should be developed in this area. In one instance, the Fifth Circuit found that where a bond is issued pursuant to a federal statute, federal law controls the scope of liability on a bond. *Transamerica Ins. Co. v. Red Top Metal, Inc.*, 384 F.2d 752, 754 (5th Cir.1967) (bond issued under the Miller Act, 40 U.S.C. §§ 270a–270d). Perhaps federal law should also govern the extent to which a surety's liability depends the trustee's liability for bonds issued pursuant to 11 U.S.C. § 322. The Court declines to address this issue, however, as it was not raised by the parties.

would apply to claims that are "evidenced by and founded upon" the bond. *Hatcher*, 81 S.W.2d at 501–02. The critical issue is whether the bond "contains within itself a contract to do certain things, the nonperformance of which may become the basis of a cause of action." *Cowart v. Russell*, 135 Tex. 562, 144 S.W.2d 249, 250 (1940). In these cases, the unwritten obligation was essentially the underlying obligation of the principal to the obligor. Arguably, then, this line of cases suggests that where the bond is merely "collateral security," rather than "itself a contract to do certain things," an action on the bond must satisfy the limitations period for the underlying claim against the principal.

Applying this standard, the Supreme Court has held that a bond that simply required the principal to "faithfully execute the duties of his office as State Treasurer" did not trigger the longer period. *Hatcher v. State*, 81 S.W.2d at 502. However, a bond that required the principal to "faithfully execute the duties of his office and pay over according to law all moneys which shall come into his hands as county treasurer, and render a true account thereof to said court at each regular term of said court" did trigger the longer period. *Cowart*, 144 S.W.2d at 250, *citing Throckmorton County v. Thompson*, 131 Tex. 543, 115 S.W.2d 1102 (1938). The bond in this case required that Tolar,

> "shall obey such orders as said Court may make in relation to said trust, and shall faithfully and truly account for all the moneys, assets, and effects of the estate of said debtor which shall come into his hands and possession, and in all respects shall faithfully perform all of his official duties as said Trustee."

Such language is more akin to the latter example, which warranted the longer limitations period, than it is to the former. This would suggest that under Texas law, Plaintiffs' action on the bond could not be thwarted by the limitations period for the underlying claim against Tolar.

Even if Plaintiffs' claims in this case were not sufficiently "evidenced by and founded upon the bond," the *Hatcher* line of cases are easily distinguishable. The issue in those cases was, which statute of limitations applied? There, it was unclear which limitations period applied to an action on a bond. For limitations purposes, Texas statutes distinguished causes of action based whether they involved written obligations or unwritten obligations, and the Supreme Court had to cram a given bond action into one of those boxes. Here, however, it is patently clear which statute of limitations applies—section 322(d). The *Hatcher* line of cases simply sets forth how to choose which statute of limitations applies. In this case, no choice needs to be made. The limitations period is unambiguously provided for by federal law. Thus, the *Hatcher* cases cannot be read as exonerating a surety if the direct action against the principal would be time-barred.

There is one Texas appeals court case that suggests that a suit against a surety may only be sustained if the underlying action against the principal would also be timely. *Lawyers Surety Corp. v. State*, 825 S.W.2d 802 (Tex.App.1992, no writ), involved an action by the State to collect on a surety's bond for state gasoline taxes. Texas Tax Code § 111.202 provided a three-year statute of limitations for any suit for unpaid taxes. *Id.* at 803. The appeals court held that "[i]f the State lost its right to assert its claim against the taxpayer after the lapse of three years from the final deficiency determination, then the surety's liability was also barred by the running of the statute." *Id.* Arguably, this establishes the proposition that a surety is exonerated once the hypothetical claim against the principal becomes time-barred.

A closer look, however, indicates that *Lawyers Surety* does not support such a broad holding. The *Lawyers Surety* court, relying heavily on *Hatcher*, ultimately held that "that the bonds are simply collateral security." *Lawyers Surety*, 825 S.W.2d at 803. The court's reliance on *Hatcher* suggests that it was simply choosing the proper statute of limitations for actions on gasoline tax bonds. Because those bonds were "simply collateral security," it chose the limitations period for the underlying claim against the principal (the three-year period for suits for unpaid taxes). Thus *Lawyers Surety* does not support the proposition that sureties are auto-

matically exonerated when the suit against the principal would be untimely. Even if it did, the case at hand is distinguishable, because as discussed above, the bond in this case was more than merely collateral security.

■ Furthermore, in determining state law, this Court bound to apply only "the law as interpreted by the state's highest court." *Ladue v. Chevron, U.S.A., Inc.*, 920 F.2d 272, 274 (5th Cir.1991). It is not bound by the decisions of intermediate state appellate courts, such as the *Lawyers Surety* decision. *Id.* Where the highest court has not yet spoken on an issue, the Court must make an "*Erie*-guess" [9] about how the highest court might rule. *F.D.I.C. v. Abraham*, 137 F.3d 264, 268 (5th Cir.1998). Thus, this Court is bound by an intermediate state appellate court only when it remains unconvinced "by other ... data that the highest court would decide otherwise." *Id.* In this case, however, to accept the broad reading of *Lawyers Surety* would actually conflict with rulings of the Texas Supreme Court.

Although the Supreme Court has recognized "that sureties traditionally are entitled to rely upon all defenses available to their principal as to the debt owed the bond obligee," *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist.*, 908 S.W.2d 415, 419 (Tex.1995), it has never held that sureties are automatically exonerated simply because a hypothetical suit against the principal would be untimely. Indeed, it could not do so without overruling the distinction drawn in *Hatcher* between bonds that are "merely collateral securities" and claims that are "evidenced by and founded upon" the bond. *See Hatcher*, 81 S.W.2d at 502. Implicit in the *Hatcher* line of cases is that when an action is "evidenced by and founded upon" the bond, the limitations period for the underlying cause of action against the principal is irrelevant. But if the broad reading of *Lawyers Surety* were adopted by the Supreme Court, even those actions that are thoroughly "evidenced by and founded upon" a bond would be thwarted by the shorter limitations period. In other words, if

sureties were always exonerated when the limitations period had run against the principal, the distinction drawn in *Hatcher* would be utterly meaningless.

Thus this Court predicts that the Texas Supreme Court would not make such a sweeping holding if squarely confronted with this issue. This prediction is buttressed by the decisions of other state supreme courts, which have held that the sureties are not automatically exonerated where the statute of limitations has run against the principal. *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum*, 114 Ill.2d 252, 102 Ill.Dec. 412, 417, 500 N.E.2d 34, 39 (1986) (refusing to "allow a surety to benefit from the barring of an action against its principal"); *Regents of Univ. of Cal. v. Hartford Accident and Indem. Co.*, 21 Cal.3d 624, 147 Cal.Rptr. 486, 495, 581 P.2d 197, 206 (1978) ("the running of the statute of limitations on the principal obligation does not exonerate the surety").

■ Finally, even if it were the case that sureties are exonerated when the direct claim against the principal would be untimely, evidence presented in this case suggested that the statute of limitations against Tolar may have been tolled by his absence from the forum. Under Tex. Civ. Prac. & Rem.Code 16.063, "[t]he absence from this state of a person against whom a cause of action may be maintained suspends the running of the applicable statutes of limitations for the period of the person's absence." This tolling applies even where a plaintiff knows the defendant's whereabouts and is capable of serving him. *Vaughn v. Deitz*, 430 S.W.2d 487, 490 (Tex.1968). In his deposition, Tolar testified, "I was in Amarillo through the end of September of 1986 and then I was in my home after that." Tolar's "home" was in Kansas. This suggests that any statute of limitations against Tolar may have been tolled since September of 1986.[10]

Safeco contends that Tolar's absence from the forum is irrelevant, because the case at hand is against Safeco, not Tolar. To be sure, Tolar's absence does not affect the run-

---

**9.** *See Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**10.** Any claim against Tolar would surely have been timely back in 1986, since he was not even appointed trustee until 1985.

ning of the statute of limitations against Safeco. But the Court has already determined that the suit against Safeco is timely under 11 U.S.C. § 322(d). As discussed above, Safeco's only hope lies in the now-discredited proposition that sureties are automatically exonerated when the underlying suit against the principal would be untimely. Tolar's absence is relevant because it suggests the suit against the principal, Tolar, would not even be untimely. Thus, even if that proposition were true, Safeco would not be able to take advantage of it.

For these reasons, the Court concludes that the Texas statute of limitations for negligence does not prevent OGC's present action.

## IV. Abandonment of claims to Republic-Bank–Dallas

Finally, Plaintiffs contend that the bankruptcy court erred in finding that OGC's claims in Adversary No. 386–3076 had been abandoned to RepublicBank–Dallas. This issue was addressed only cursorily by the bankruptcy court, which is understandable since its ruling on limitations disposed of the entire motion. Since this Court has reversed the bankruptcy court's statutes of limitations finding, it remands the abandonment issue back to the bankruptcy court for further analysis.

## V. Conclusion

For the reasons stated above, the Court finds that the bankruptcy court erred in granting Defendant–Appellee's motion for summary judgment. The judgment is **VACATED** and **REMANDED** for further proceedings.