In re LOUIS ROSENBERG AUTO PARTS, INC., Debtor.

UNITED STATES by CENTURY NATIONAL BANK,
Plaintiff,

v.

Joseph P. NIGRO, Trustee, Defendant.

Bankruptcy No. 88–20083–MBM.
Adv. No. 96–2254–MBM.

United States Bankruptcy Court,
W.D. Pennsylvania.

June 11, 1997.

**670**

Robert J. Taylor, Ambridge, PA, for Century National Bank.

James M. Malley, Pittsburgh, PA, for Joseph P. Nigro, Trustee.

### MEMORANDUM OPINION

M. BRUCE McCULLOUGH, Bankruptcy Judge.

Century National Bank (Century), plaintiff in interest herein, commenced this adversary proceeding on June 6, 1996, pursuant to Rule 2010(b) of the Federal Rules of Bankruptcy Procedure (hereafter Fed.R.Bankr.P.)[1] so that it could recover its alleged damages from the bond of Joseph Nigro (Nigro), Chapter 7 trustee in this case and the named defendant herein. Nigro now moves for dismissal of this proceeding under Rule 12(b)(6) of the Federal Rules of Civil Procedure (hereafter Fed.R.Civ.P.)[2] because he asserts that Century's complaint fails to state a claim upon which relief can be granted.

### STATEMENT OF FACTS

Nigro was appointed as trustee on June 10, 1992, after this case was converted from Chapter 11 to Chapter 7 on June 5, 1992. As of the conversion date Century had a claim against the debtor for $50,700, which claim was secured by a lien on all of the debtor's inventory and equipment. Century's counsel asserted at the § 341(a) meeting of creditors that, because its claim exceeded the value of its lien in said property (i.e., the debtor's estate did not have any equity in the property), Century would seek relief from the automatic stay so that it could pursue a sale of the property. However, Century never obtained relief from the stay (a) because the motion that it filed was returned for noncompliance with a local self-scheduling rule, (b) the motion was never refiled in a proper manner, and (c) notwithstanding Century's present assertion that it had entered into an agreement to sell debtor's property for $28,000, which amount was less than its claim. Subsequent to a hearing on December 23, 1992, Bankruptcy Judge Joseph Cosetti approved Nigro's motion for appointment of an entity to liquidate the property. Century asserts that it acquiesced in pursuing relief from the stay, as well as in opposing Nigro's liquidation motion, because (a) Nigro "verified to the Court" that said property had a value of over $900,000,[3] which amount would more than fully compensate Century, and (b)

---

**1.** Fed.R.Bankr.P. 2010(b) provides that "[a] proceeding on the trustee's bond may be brought by any party in interest in the name of the United States for the use of the entity injured by the breach of the condition." Fed.R.Bankr.P. 2010(b), 11 U.S.C.A. (West 1997).

**2.** Fed.R.Civ.P. 12(b)(6) applies in bankruptcy adversary proceedings. Fed.R.Bankr.P. 7012(b), 11 U.S.C.A. (West 1997).

**3.** A transcript of the December 23, 1992, hearing reveals that Nigro represented to the Court that he "anticipate[d] that the estate will yield approximately $300,000 to $400,000.... The estate[, however] may end up yielding nothing."

Nigro, thus, would not consent to Century's request for relief from the stay.

Century asserts, in paragraph 24 of its complaint, that "[f]rom the outset in late 1992 to early 1993, ... [it] had serious concerns about the liquidator and the progress of the liquidation." Such concerns certainly appear to have been warranted given that as of May 19, 1994, only $2.609.84 in proceeds had been realized through the liquidation. Furthermore, Nigro appears to have experienced numerous difficulties in his dealings with the liquidator culminating in several motions, brought between December 22, 1994, and May 5, 1995, for a turnover by the liquidator of the property, sanctions against the liquidator, and a request that the Court recommend to appropriate authorities that criminal actions be taken against the liquidator. Each of these actions apparently were consented to by Century and appear, given the circumstances, to have been warranted. Century now asserts, however, that Nigro was negligent in performing his duties as trustee throughout the liquidation process, primarily citing in support of said assertion the minimal proceeds realized from the liquidation and the length of the unsuccessful liquidation process.

In response to its belief that Nigro negligently performed his duties as trustee, and in an attempt to recoup $69,572.90 in asserted damages—the bulk of which presumably represents the value of its claim against the debtor—century initiated this proceeding against Nigro's bond. However, Century has failed to name as a party defendant in its complaint Fidelity Deposit Company of Maryland (Fidelity), who is the surety on Nigro's bond. Century also asks for additional relief in its complaint in the form of (a) monetary relief against Nigro personally, (b) removal of Nigro as trustee, and (c) appointment of the U.S. Trustee as Chapter 7 trustee in this case.

Nigro asserts that Century's complaint fails to state a claim for which relief can be granted, and thus that said complaint should be dismissed under Fed.R.Civ.P. 12(b)(6), because (a) Century's alleged damages were actually, as well as proximately, caused by the alleged misrepresentations of the debtor, the liquidator's malfeasance, and Century's continuous inaction throughout the Chapter 7 case, (b) Nigro's performance was protected in its entirety by the general "business judgment" rule, (c) Century's actions are barred by the equitable doctrine of laches, (d) Century has failed to name as a party defendant in its complaint Fidelity, who is an indispensable party to this matter, and (e) Century's actions upon Nigro's bond and against Nigro personally are barred by pertinent statutes of limitation.

## DISCUSSION

### I. Standard When Ruling on a Motion to Dismiss for Failure to State a Claim.

■■■ "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed.1990). The corollary of this principle is that, with the exception of those items listed above, matters outside the bounds of the complaint cannot be considered when ruling on a Rule 12(b)(6) motion. *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 573 (5th Cir.1980) ("The only way to test the merit of a claim if matters outside the bounds of the complaint must be considered is by way of motion for summary judgment"). "Dismissal [under Rule 12(b)(6) ] is justified only when the allegations of the complaint itself clearly demonstrate that plaintiff does not have a claim." 5A Wright & Miller, *supra* § 1357. Stated differently, (a) "[a] motion to dismiss under Fed.R.Civ.P. 12(b)(6) admits the well-pleaded allegations of the complaint, but denies their legal sufficiency," *Nationwide Insurance Co. v. Agway Insurance Co.*, 845 F.Supp. 252, 254 (M.D.Pa.1994) (citing *Hospital Building Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 740, 96 S.Ct. 1848, 1850–51, 48 L.Ed.2d 338 (1976)), and (b) " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to re-

lief.' " *Leone v. Aetna Casualty & Surety Co.*, 599 F.2d 566, 567 (3rd Cir.1979) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

## II. *Whether Century's Complaint Should be Dismissed for Failure to State a Claim?*

▓▓▓▓ First, the Court cannot grant Nigro's Rule 12(b)(6) motion on the basis that Century's alleged damages were legally caused by the debtor, the liquidator, and/or Century itself because (a) such bars to Century's requested relief are neither raised in the allegations, nor conclusively apparent from the face, of Century's complaint, and (b) some doubt, albeit perhaps small, presently exists as to whether these asserted transgressions on the part of these other entities (i) occurred, (ii) actually caused Century's loss, and (iii) constituted superseding intervening events that broke the chain of Nigro's alleged negligence.[4] Second, the Court cannot grant Nigro's Rule 12(b)(6) motion on the basis that his actions are protected under the "business judgment" rule because said rule, without more, does not shield a fiduciary in the event that he has committed negligence.[5] Third, Nigro's argument that Century's claim is barred by laches necessarily fails because (a) "[l]aches is a purely equitable doctrine and[, thus,] may not be invoked in an action at law," 1 P.L.E. *Actions* § 52 (1986) at 177; 1 Dan B. Dobbs, *Law of Remedies* § 2.4(4) at 105 (2d ed.1993), and (b) Century's action is primarily a legal one since the bulk of its requested relief is in the form of monetary damages rather than equitable remedies.[6] Fourth, the Court will not dismiss this suit pursuant to Fed.R.Civ.P. 19(b) because, notwithstanding Century's failure to name as a party defendant Fidelity, who is the surety on Nigro's bond and, thus, an indispensable party to this matter,[7] said failure can be

---

4. Century's alleged inaction in protecting its own interest is not an appropriate ground for dismissing its complaint at this time for the reasons mentioned despite the fact that Nigro asserts that said inaction caused Century's loss. However, such inaction, if demonstrated by Nigro subsequently to have contributed to Century's loss, would constitute a valid basis for dismissal of Century's complaint. This is because, as a matter of law, Century had a duty to itself to protect its own interest. *Matter of Schwen's, Inc.*, 19 B.R. 681, 694 (Bankr.D.Minn.1981); *In re Thu Viet Dinh*, 80 B.R. 819, 823 (Bankr.S.D.Miss. 1987); *In re Peckinpaugh*, 50 B.R. 865, 869 (Bankr.N.D.Ohio). If Century breached said duty in this case by failing to take requisite action, this Court would be constrained to conclude that (a) said breach on Century's part also constituted negligence, and (b) Century's negligence constituted a superseding intervening event that broke the chain of Nigro's alleged negligence given that Century concedes that it was aware of Nigro's performance throughout this case. 27 P.L.E. *Negligence* § 80 (1960 & Supp.1996). Furthermore, although the Court cannot presently rule in Nigro's favor on the issue of Century's potential superseding negligence, the Court also "do[es] not imply that a question of fact exists on the question whether" Century has committed acts that would constitute superseding negligence on its part. *Leone*, 599 F.2d at 569. Indeed, this Court believes that the issue of Century's potential superseding negligence may appropriately be resolved by summary judgment. *See infra* at page 19 of this opinion.

5. Indeed, see the discussion at footnote 9 to this opinion wherein the Court points out that the apparent rule within the Third Circuit, as well as the majority rule, is that a bankruptcy trustee can be held personally liable for his negligence despite the fact that he exercises considerable discretion in performing his or her duties.

6. "Laches consists of two essential elements: (1) inexcusable delay in instituting suit, and (2) prejudice resulting to the defendant from such delay." *In re Tri–State Hoists, Inc.*, 1991 WL 193733 at *7 (Bankr.E.D.Pa.1991) (citing *Gruca v. U.S. Steel Corp.*, 495 F.2d 1252, 1258 (3rd Cir.1974); *Sobosle v. U.S. Steel Corp.*, 359 F.2d 7, 12–13 (3rd Cir.1966)); *see also* 13 P.L.E. *Equity* §§ 41–43 (1959) at 479–484. Because Nigro has not yet demonstrated to the Court that he has been prejudiced by Century's delay in instituting this proceeding, Nigro could not presently succeed in his laches defense even if laches were to constitute a valid defense to Century's legal action. Although implied waiver can constitute a valid defense to legal actions as well as equitable ones, 1 Dobbs, *supra* § 2.4(4) at 105, implied waiver also requires a showing of prejudice or detriment to the defendant. *In re Neiberg*, 161 B.R. 606, 610 (Bankr.W.D.Pa.1993); 1 Dobbs, *supra* § 2.4(4) at 105. Therefore, amending his pleadings so as to plead as a defense waiver rather than laches would be futile at this time because Nigro has not yet demonstrated to the Court that he has been prejudiced by Century's delay in instituting this proceeding.

7. Fidelity, because it will ultimately be liable for payment on Nigro's bond in the event that Century is successful herein, is undeniably an indispensable party as that term is contemplated in

easily rectified pursuant to Fed.R.Civ.P. 21 and without any prejudice to Fidelity given the preliminary stage at which this proceeding presently rests.[8] However, the Court **GRANTS** Nigro's Rule 12(b)(6) dismissal motion **to the extent** that Century's complaint pleads causes of action against both Nigro personally[9] and upon his bond that accrued **prior to June 7, 1994**, because, as of the commencement date of this proceeding, the pertinent statute of limitations had passed with respect to said actions.[10] The Court will now proceed to set forth its rationale for this last conclusion.

### III. The Statute of Limitations with Respect to Actions against both Nigro's Bond and Nigro Personally.

■ Century argues that 11 U.S.C. § 322(d) provides the sole relevant limitations period in an action upon a bankruptcy trustee's bond. That section provides, in particular, that "[a] proceeding on a trustee's bond may not be commenced after two years after the date on which such trustee was discharged." 11 U.S.C.A. § 322(d) (West 1993). Because Nigro has not yet been discharged from his duties as trustee in this case, argues Century, it may proceed with its action against his bond. Although this Court agrees that § 322(d) provides a true statute of limitations which supersedes other limitations periods that would otherwise apply to actions upon fiduciary bonds, this Court must nevertheless disagree with Century's conclusion that Fidelity (the surety) remains liable for causes of actions upon Nigro's bond that accrued prior to June 7, 1994. Instead, this Court holds that Fidelity has been discharged from causes of action upon Nigro's bond that accrued prior to June 7, 1994, notwithstanding § 322(d), because (a) a surety is discharged from liability on a bankruptcy trustee's bond if the pertinent limitations period for an underlying cause of action against the trustee personally has run prior to the commencement of an action upon said bond, *In re Oles Grain Co.*, 206 B.R. 126, 132–33 (Bankr.N.D.Tex.1997); *In re Tri-*

---

Fed.R.Civ.P. 19. Fed.R.Civ.P. 19 applies to this proceeding pursuant to Fed.R.Bankr.P. 7019. Because Fidelity's liability hinges on whether Nigro is adjudged to have negligently performed his duties, Fidelity has an interest in demonstrating to this Court that Nigro was not negligent in his performance. Furthermore, Fidelity "is so situated that the disposition of th[is] action in ... [its] absence may[,] as a practical matter[,] impair or impede ... [its] ability to protect that interest because Fidelity may be precluded in the future, possibly by virtue of res judicata, from attacking this Court's decision regarding whether Nigro was negligent."

8. Fed.R.Civ.P. 21 permits the Court, on its own initiative and at this time, to order that Fidelity be added to this proceeding as a party defendant provided that said addition will not be unjust to Fidelity (i.e., provided that Fidelity is not prejudiced by its joinder). Fed.R.Civ.P. 21, 11 U.S.C.A. (West 1992). Fed.R.Civ.P. 21 applies to this proceeding pursuant to Fed.R.Bankr.P. 7021. Said joinder will not be unjust and, therefore, Fidelity shall be joined as a party defendant herein, because (a) a surety makes itself subject to the jurisdiction of this Court pursuant to Fed.R.Bankr.P. 9025, and (b) Fidelity will not be prejudiced by joinder at this time given the preliminary stage at which this proceeding presently rests.

9. This Court will presume, at least at this stage of this particular proceeding, that a bankruptcy trustee can be subjected to personal liability for mere negligence in the performance of administrative duties. The Court cites as support for this presumption the decision in *In re Sturm*, 121 B.R. 443 (Bankr.E.D.Pa.1990). The *Sturm* court noted that "significant differences exist among the Courts of Appeals and inferior courts, apart from those of our own Third Circuit, regarding the standards for determining when a trustee is immune from personal liability from suit." *Sturm*, 121 B.R. at 447. The court in *Sturm* concluded nevertheless that, based upon "the standards applied in both [*In re*] *Prindible* [, 115 F.2d 21 (3rd Cir.1940),] and [*In re*] *Lambertville* [*Rubber Co.*, 111 F.2d 45 (3rd Cir.1940),] ... a [bankruptcy] trustee [in the Third Circuit] is subject to personal liability via surcharge if his conduct is no more than negligent." *Sturm*, 121 B.R. at 448. The *Sturm* court recently followed its own decision in *In re Fineberg*, 1997 WL 75251 at *3 (Bankr.E.D.Pa.1997). The only other court in the Third Circuit to address this particular issue since *Sturm* merely noted, as did the court in *Sturm*, that courts differ as to their position regarding this issue, and that "[t]he only relevant Third Circuit precedents were decided over fifty years ago." *Tennsco Corp. v. Estey Metal Products, Inc.*, 200 B.R. 542, 545 note 2 (D.N.J.1996) (citing *Prindible* and *Lambertville*).

10. "A Rule 12(b)(6) motion may be advanced on the ground that the complaint on its face shows that the claim is barred by the applicable statute of limitations." *Leone*, 599 F.2d at 567 note 1; 5A Wright & Miller, *supra* § 1357.

*State Hoists, Inc.,* 1991 WL 193733 at *6 (Bankr.E.D.Pa.1991), (b) a surety's discharge in this manner is preserved despite the fact that the limitations period for an action upon the surety bond may not yet have run, *Id.,* (c) Century's underlying causes of action against Nigro personally are fashioned as ones in negligence, and (d) the pertinent limitations period with respect to negligence causes of action against Nigro that accrued prior to June 7, 1994, had passed prior to the commencement of the above-captioned adversary proceeding. Because the pertinent limitations period with respect to underlying negligence actions against Nigro that accrued prior to June 7, 1994, had passed prior to the commencement of the above-captioned adversary proceeding, Nigro also cannot be held personally liable for any such alleged negligence.

### A. *State of the Law Regarding a Surety's Discharge on a Bankruptcy Trustee's Bond.*

■ This Court, in holding as it does, cites with approval the following passage from the decision in *Oles Grain:*

[T]he liability of a surety is derivative in nature, and depends on the principal's liability.[11] Since the present action against the bonding company is filed on the basis of the trustee's negligence, then the bonding company should have the benefit of the statute of limitations for that cause of action. If the statute of limitations has run against the trustee, then the statute also acts as a bar for suits against the trustee's bonding company.

*Oles Grain,* 206 B.R. at 132–33. This Court believes that the court in *Oles Grain* was correct in deciding as it did because (a) neither the language nor the intent of § 322(d) addresses whether a surety can be discharged from liability on a bankruptcy trustee's bond if the pertinent limitations period for an underlying cause of action against said trustee has run prior to the commencement of an action upon said bond, (b) since § 322(d) does not address whether a surety can be discharged by the running of the

limitations period for an underlying cause of action against the trustee, courts may turn to state law to fill in this particular gap of an unquestionably federal cause of action, 19 Wright, Miller & Cooper, *supra* §§ 4516, 4518 (2d ed.1996), and (c) the law in Texas is clear that a surety is discharged if a principal has also been discharged by the running of the limitations period on an action directly against it. *Oles Grain,* 206 B.R. at 132–33 (citing *Lawyers Surety Corp. v. State,* 825 S.W.2d 802, 803 (Tex.App.1992)).

The above reasoning of the *Oles Grain* court also appears to form the basis for the similar conclusion of the court in *Tri–State Hoists* to the effect that § 322(d) "does not reawaken a suit on the [t]rustee's bond when limitations on the underlying cause of action ha[ve] already run prior to the [t]rustee's discharge." *Tri–State Hoists,* 1991 WL 193733 at *6. However, this Court notes that the law in Pennsylvania is clear that a surety is not discharged although a principal may have been previously discharged by the running of the limitations period on an action directly against it. *In re Anthracite Trust Co. of Scranton,* 154 Pa.Super. 553, 36 A.2d 727, 729 (1944); *U.S. v. Mercantile Trust Co. of Pittsburg,* 213 Pa. 411, 62 A. 1062, 1062 (1906); *see also* 35 P.L.E. *Suretyship* § 75 (1961) at 387; 22 P.L.E. *Limitation of Actions* § 142 (1959) at 545–46. Therefore, the court in *Tri–State Hoists,* in deciding as it did, necessarily must have chosen not to mechanically draw from Pennsylvania law when filling in this particular gap of federal law. This Court concludes that the court in *Tri–State Hoists* was correct in its decision not to mechanically look to Pennsylvania state law in this particular instance.

■ As an initial matter, this Court points out that, although courts, when filling in the gaps of a reasonably detailed federal statutory scheme, quite often look to and borrow from the rules of a forum state, they are not necessarily bound to do so. 19 Wright, Miller & Cooper, *supra* §§ 4516,

---

11. A surety bond is technically nothing more than collateral which secures the undertaking of the principal. *Lawyers Surety Corp. v. State,* 825 S.W.2d 802, 803 (Tex.App.1992).

4518.[12] Therefore, if a court ascertains strong reasons for departing from the rules of a forum state, it may disregard said rules and adopt as federal common law those of another jurisdiction. *Id.* This Court ascertains strong reasons in this particular matter for departing from the law in Pennsylvania and holding that a surety can be discharged from liability on a bankruptcy trustee's bond if the pertinent limitations period for an underlying cause of action against said trustee has run prior to the commencement of an action upon said bond.

First, by deciding this case in the same fashion as did the courts in *Oles Grain* and *Tri-State Hoists,* this Court advances the important cause of uniformity among the courts in application of a federal law. Second, this Court finds the decisional law of Texas preferable to that in Pennsylvania on this particular issue. In particular, this Court strongly agrees with the Texas Court of Appeals that, to allow a party to proceed against a surety bond after a limitations period has already passed on an action directly against the principal, would permit said party to essentially circumvent said limitations period and, thereby, render it ineffective; such a situation appears to be antithetical to the intent of the limitations period on the underlying action against a principal.[13] *Lawyers Surety Corp.,* 825 S.W.2d at 802–03.

Finally, and perhaps *most importantly,* this Court finds that it would not be appropriate for a party, in a federal action upon a bankruptcy trustee's bond, to take advantage of the Pennsylvania rule that a surety is not derivatively discharged notwithstanding a principal's prior discharge. Said impropriety arises from the fact that, in Pennsylvania, the limitations period is (a) one (1) year for an action upon a fiduciary bond similar in nature to that of a bankruptcy trustee's bond, 42 Pa.Cons.Stat.Ann. § 5523(2) (Purdon 1997),[14] while (b) generally two (2) years or more for any underlying cause of action. 42 Pa.C.S.A. §§ 5524–31. Therefore, in Pennsylvania, a surety on a fiduciary bond will almost always be discharged from liability on said bond prior to the running of the limitations period against a fiduciary on the underlying cause of action. That being the case, the legislature in Pennsylvania appears to have made a conscious decision to ensure that sureties on fiduciary bonds in Pennsylvania will be discharged prior to, rather than coincident with or subsequent to, the discharge of a principal on any underlying cause of action. Therefore, were the present equilibrium upset and the limitations period on an action against a fiduciary bond lengthened in Pennsylvania, such as to coincide with that period provided in § 322(d) of the Bankruptcy Code, this Court suspects that Pennsylvania might adopt the rule in Texas permitting derivative discharge of a surety if a principal has also

**12.** Indeed, when filling in the gaps of federal law, courts quite often look to and borrow from the rules of a forum state *merely as a matter of simple judicial convenience.* 19 Wright, Miller & Cooper, *supra* § 4518.

**13.** Circumvention of the limitations period for the underlying cause of action against a principal is generally effectuated by the surety's contractual right for reimbursement from the principal notwithstanding the passage of said limitations period.

**14.** A bankruptcy trustee, in order to qualify to serve as such, must file with the Bankruptcy Court a bond guaranteeing the faithful performance of said trustee's duties. 11 U.S.C.A. § 322(a) (West 1997). Therefore, a bankruptcy trustee's bond constitutes a "court fiduciary bond." Restatement (Third) of Suretyship and Guaranty § 71 cmt. d (1996). "The legislative history of the one-year statute of limitations provided by 42 Pa.C.S.A. § 5523(2) establishes that

it applies to bonds filed with courts of the Commonwealth of Pennsylvania." *Springfield Oil Services, Inc. v. Costello,* 941 F.Supp. 45, 48–49 (E.D.Pa.1996) (citing, *inter alia,* Pennsylvania Bar Association Judicial Code Explanation, (Special Issue) reprinted in 42 Pa.C.S.A. §§ 101–1700, at xi–xxxii, xvi (1981)). Therefore, the limitations period for actions on court fiduciary bonds filed with Pennsylvania courts is one year.

Century, in its briefs, makes mention of a four-year limitations period for "an action [in Pennsylvania] upon any official bond of a public official, officer or employee." 42 Pa.C.S.A. § 5525(6). However, because a bankruptcy trustee represents a select group of creditors and shareholders rather than the public at large, a bankruptcy trustee is not a public official, officer or employee. *California State Board of Equalization v. Sierra Summit,* 490 U.S. 844, 849, 109 S.Ct. 2228, 2232–33, 104 L.Ed.2d 910 (1989). Therefore, the limitations period in Pennsylvania is one year for an action upon a bond similar in nature to a bankruptcy trustee's.

been discharged. Based upon this analysis, this Court certainly cannot permit a party to mix and match Pennsylvania's "no derivative discharge" rule with the longer limitations period provided in § 322(d) of the Bankruptcy Code.

In accordance with the above rationale, this Court holds that a surety is discharged from liability on a bankruptcy trustee's bond if the pertinent limitations period for an underlying cause of action against the trustee has run prior to the commencement of an action upon said bond.

## B. *The pertinent limitations period has passed on the underlying cause of action against Nigro.*

■■■■■ The Court also has no problem in finding that the pertinent limitations period with respect to negligence causes of action against Nigro that accrued prior to June 7, 1994, had passed prior to the commencement of the above-captioned adversary proceeding. In order to arrive at this conclusion the Court must determine (a) the pertinent statute of limitations for a negligence cause of action, (b) when said limitations period commenced running, and (c) whether said limitations period was tolled for any reason in this matter. Because the Bankruptcy Code does not contain a statute of limitations for negligence actions directly against a bankruptcy trustee, "we must borrow a statute of limitations applicable to similar actions against private parties under state law." *In re Noakes,* 104 B.R. 323, 327 (Bankr.D.Mont.1989); *U.S., etc., Mississippi Road Supply Co. v. H.R. Morgan, Inc.,* 542 F.2d 262, 268 (5th Cir. 1976). The statute of limitations for an action fashioned in negligence in Pennsylvania is two (2) years. 42 Pa.C.S.A. § 5524(7). This limitations period commences to run "from the time the cause of action accrued," 42 Pa.C.S.A. § 5502(a), which practically means from the point in time that a plaintiff became, or reasonably should have become, aware of the injury-causing event. *Donnelly v. DeBourke,* 280 Pa.Super. 486, 421 A.2d 826, 829 (1980). Because Century concedes that, by June 6, 1994, it had become fully apprised of those injury-causing actions/inactions by Nigro that had occurred up to that point, any negligence causes of action based upon said actions/inactions accrued, at the latest, by June 6, 1994. Because the two-year limitations period regarding said causes of action began running on the same date, said limitations period had passed precisely two years and one day later on June 6, 1996, which is when this proceeding was commenced.

■■■■ Century asserts several arguments in support of its contention that the two-year limitations period should be tolled. The Court, however, finds fault with each of said arguments and, therefore, the two-year limitations period shall not be tolled. First, Century asserts that the limitations period should be tolled because, on October 1, 1993, Nigro threatened to request Rule 11 sanctions, costs, and attorney's fees in the event that Century moved for a turnover of the assets which Nigro was attempting to liquidate. Although Nigro indicated at a hearing on this matter that his threat was misconstrued by Century, the Court notes in any event, and notwithstanding the Court's disbelief that said threat impacted the actions of Century, that such a threat cannot toll a limitations period. An attorney, on behalf of his client, cannot abstain from raising potentially meritorious motions merely because he is threatened with sanctions by opposing counsel; to permit such relief invites malpractice upon the part of said attorney and would result in a dangerous precedent because such an argument can be raised routinely.

■■■■ Century also asserts that the limitations period for a proceeding on the trustee's bond is tolled throughout this case because there is a ban on the filing of a suit on said bond while the trustee is still in place. This is ludicrous, however, as neither the Bankruptcy Code nor the Bankruptcy Rules place any such ban upon the filing of an action upon a trustee's bond. Also irrelevant to this matter is (a) the "acknowledgment" doctrine, which is inapplicable herein because said doctrine only applies to debts and not continuing fiduciary duties, 22 P.L.E. *Limitation of Actions* § 121 (1959) at 526–30, (b) the rule that a limitations period is tolled if intentional or unintentional fraud or conceal-

ment causes a plaintiff to relax his vigilance in pressing a prospective cause of action, since Century has not pleaded the presence of fraud or concealment on Nigro's part, and (c) the rule that, where a contractual cause of action is a continuing one, a limitations period on said action is tolled, because said doctrine only applies to contractual causes of action and not, as in this instance, an underlying tort action for negligence. *William B. Tenny, etc. v. Dauphin Deposit Bank,* 302 Pa.Super. 342, 448 A.2d 1073, 1075–76 (1982).

Century also appears to assert that this Court's order of April 22, 1996, somehow directed or authorized the bringing of an action on the trustee's bond so that the statute of limitations cannot now be raised by Nigro as a defense. The Court's order did nothing of the kind, however; instead, it denied a motion for appointment of a party to proceed on the bond since such appointment was unnecessary for such a proceeding. The Court certainly did not then implicitly bar Nigro from raising as a defense to this bond proceeding the running of a pertinent statute of limitations, nor is it likely that the Court could have done so if it had desired. *See* 42 Pa.C.S.A. § 5504.

## CONCLUSION

The Court **GRANTS** Nigro's Rule 12(b)(6) motion, and Century's complaint is **DISMISSED WITH PREJUDICE**, to the extent that Century's complaint pleads causes of actions against both Nigro personally and upon his bond that accrued **prior to June 7, 1994**, because, notwithstanding 11 U.S.C. § 322(d), (a) Fidelity is discharged from liability on Nigro's bond if the pertinent limitations period for an underlying cause of action against Nigro personally has run prior to the commencement of an action upon said bond, (b) Fidelity's discharge in this manner is preserved despite the fact that the limitations period for an action upon Nigro's bond may not yet have run, (c) Century's underlying causes of action against Nigro personally are fashioned as ones in negligence, and (d) the two-year limitations period with respect to negligence causes of action against Nigro that accrued prior to June 7, 1994, had passed prior to the commencement of the above-captioned adversary proceeding. Although the Court cannot be certain whether Century's complaint pleads causes of action against either Nigro personally or upon his bond that accrued **subsequent to June 6, 1994**, said complaint shall **not be dismissed to the extent that it does so plead**, at least **at this point in time** on the basis of Nigro's Rule 12(b)(6) motion. However, so as to dispose of any residual portion of Century's complaint, the Court hereby **DIRECTS** Nigro to move for **summary judgment** on that part of Century's complaint that might plead causes of action against either Nigro personally or upon his bond that accrued subsequent to June 6, 1994. Nigro shall **FILE** said summary judgment motion with the Court within **twenty (20) days** from the date upon which this opinion is issued; Century shall have **twenty (20) days** thereafter within which to respond; the Court shall not set a hearing for the summary judgment motion unless (a) it finds a hearing necessary, or (b) either party requests a hearing.

Furthermore, the Court, pursuant to Fed. R.Civ.P. 21, hereby **JOINS Fidelity** as a party **defendant** to this proceeding, henceforth, because Fidelity is an indispensable party that is subject to this Court's jurisdiction. Finally, the Court **cannot dismiss**, on the basis of Nigro's Rule 12(b)(6) motion, **that portion** of Century's complaint requesting **removal** of Nigro as trustee and **appointment** of the U.S. Trustee in his stead because neither Nigro's motion nor his briefs address this particular issue. Therefore, the Court will **DEFER** its consideration of this particular issue until after the aforementioned summary judgment motion is resolved.

An appropriate order will be entered.

## ORDER OF COURT

**AND NOW**, this **11th day** of **June, 1997**, upon consideration of defendant's motion, pursuant to Fed.R.Civ.P. 12(b)(6), for dismissal of the above-captioned adversary proceeding on the basis that plaintiffs complaint fails to state a claim upon which relief can be granted, and subsequent to several hearings on the motion, and in accordance with the accompanying memorandum opinion of this

Court dated **June 11, 1997,** it is **hereby OR-DERED, ADJUDGED, AND DECREED** that defendant's Rule 12(b)(6) motion is **GRANTED,** and plaintiffs complaint is **DISMISSED WITH PREJUDICE, to the extent** that plaintiffs complaint pleads causes of actions against both defendant personally and upon his bond that accrued **prior to June 7, 1994,** because, as of the commencement date of this proceeding, the pertinent statute of limitations had passed with respect to said actions notwithstanding 11 U.S.C. § 322(d). Plaintiff's complaint **shall not be dismissed at this time only to the extent** that it pleads causes of action against either defendant personally or upon his bond that accrued **subsequent to June 6, 1994.** However, the Court hereby **DIRECTS** defendant to move for **summary judgment** on that part of plaintiffs complaint that might plead such causes of action. **Defendant** shall **FILE** said summary judgment motion with the Court within **twenty (20) days** from the date upon which this order is entered; Century shall have **twenty (20) days** thereafter within which to respond; the Court shall not set a hearing for the summary judgment motion unless (a) it finds a hearing necessary, or (b) either party requests a hearing.

Furthermore, the Court, pursuant to Fed. R.Civ.P. 21, hereby **JOINS Fidelity** as a party **defendant** to this proceeding, henceforth, because Fidelity is an indispensable party that is subject to this Court's jurisdiction. Finally, the Court **cannot dismiss,** on the basis of Nigro's Rule 12(b)(6) motion, **that portion** of Century's complaint requesting **removal** of Nigro as trustee and **appointment** of the U.S. Trustee in his stead because neither Nigro's motion nor his briefs address this particular issue. Therefore, the Court will **DEFER** its consideration of this particular issue until after the aforementioned summary judgment motion is resolved.